Tuuley, J.
delivered the opinion of the court.
This is an action of detinue, brought by John B. Weld against S. M. Wheaton, for the recovery of a negro man, named John. Upon the trial in the court below, the plaintiff introduced a witness, Bowler Cook, who stated that in frequent conversations with Frederick Christian in the year 1839, he heard Frederick Christian say that he had given the negro man, John, the slave in controversy, to Mary C. Christian, the wife of the plaintiff, Weld; that he knew the boy, John, from the year 1826 or 1827, and that he belonged to Frederick Christian, who was the uncle of Mary C. Christian.
The defendant introduced Joseph Lundy, by whom he proved that he first knew said boy, John, in 1831 or 1832, that Frederick C. Christian, at that time, lived within about a half mile of witness, that witness was often at his house, where he saw said boy as the servant of Frederick Christian, until the year 1832 or 1833, about which time he was sent by Frederick Christian to his brother, Wyatt Christian, the father of the plaintiff’s wife. *776 The defendant then proposed to prove, by said witness, that a short time thereafter, Frederick Christian told him that he had sent the boy, John, to his brother, Wyatt, to serve him in place of the one drowned. To the reception of which testimony, the plaintiff objected, and his objection was sustained by the court and the proof refused. In this, we think the court erred from a misconception of the nature of the case. The judge acted upon the legal proposition, that when a sale of property has been established, no proof of any conversation of the vendor made after the sale, shall be heard to impugn it; this proposition is certainly true, and is based upon the principle that no one shall be permitted by subsequent statements to vitiate or set aside his contracts. But in this case, the question, and the only question, was whether or not Frederick Christian had given the negro to his niece, Mary 0. Christian, and the proof introduced by the plaintiff to establish the fact of the gift was declarations to that effect, said to have been made by him; unquestionably his declarations, to the contrary, ought to have been heard, as it is upon a proper adjustment and balance of these declarations and counter-declarations, if they were made, that the judgment of the jury must rest in finding the fact thus submitted to them. Vastly different would it have been if the proof relied upon for establishing the gift, had been direct either by bill of salé or by a delivery.
Froof was also offered by the defendant to show that while the negro was in Wyatt Christian’s possession he always stated that he was the property of his brother, Frederick; this was objected to because it is contended that the negro having been given by. Frederick Christian to Mary C. Christian, the daughter, the possession *777 of Wyatt Christian, her father, was her possession, and that the nature of this possession shall not be changed ’by' the after-statements of the father. This is true in a given state of the case: if there, had been a valid gift of the negro by Frederick Christian, to Mary C. Christian, and the possession delivered to her father, nothing that he could afterwards do or say in relation thereto would affect her rights; she being a minor and in his custody as her guardian for nurture, his possession would be her possession, and adverse possession not being necessary to perfect the title against Frederick Christian, nothing from Wyatt Christian, as to the nature of the possession, would be relevant to the right. But to make such gift valid subsequent to the passage of the act of 1831, ch. 90, it must have been in writing, for by the 12th section of that act, it is provided that all gifts of slaves shall be in writing, or the same shall be utterly void and of no effect whatever. If, then, this gift, as claimed to have been made by Frederick Christian, was made after the passage of the act of 1831, it not being in writing, it could only be made effectual by three years adverse possession; then it being insisted that this adverse possession was held for that space of time by Wyatt Christian for his daughter, Mary C., it became important to know what the character of that possession was, whether it was for his daughter adversely to the right of his brother Frederick, or whether it was in subjection to his brother’s right. Statements thus made by Wyatt Christian during that period of time as to the nature of his possession, are, in our opinion, legitimate evidence to show that he either did, or did not, hold it adversely to his brother. It is attempted to obviate this difficulty by asserting that this gift was previous to the *778 passage of the act of 1831, and that adverse possession was not necessary to perfect the title under it. To this, all that it is necessary to observe, is, that there is no satisfactory proof that the gift was made previous to 1831. There is some proof that the negro was, perhaps, in the possession of Wyatt Christian, previous to that time, engaged in nursing his children, but there is no evidence of a gift at that time; and there is other proof that the negro was afterwards, and subsequent to the year 1831, in the possession of Frederick Christian and claimed by him in his own right, and that he was after-wards sent to Wyatt Christian, in 1832, or 1833. The testimony of Mrs. Etheridge has no specification of dates and it is too vague and uncertain to predicate a gift upon it as having been made anterior to the year, 1831. We think it establishes that a right was made, but when, it leaves entirely uncertain. It was, as she says, before her memory, for she says the negro never was out of her father’s possession within her recollection. The period of her recollection must be referred to a time posterior to the year 1832 or 1833, for Lundy swears that it was in one of these years that the negro was sent to Wyatt Christian by Frederick, he having been previously to that time in his possession, and used by him as his servant on his farm in the years 1831 and 1832. Under these circumstances, we think the declarations of Freaderick Christian, as to the loan of the negro to his brother Wyatt, which were proposed to be proved by Lundy, should have been received, and also any statements made by Wyatt Christian during the first three years he ■ held the negro in his possession, tending to show whether that possession was adverse to the right of Frederick Christian, if it be attempted to sustain *779 the title of the plaintiff, by virtue of such adverse possession.
Judgment reversed and case remanded for a new trial.